UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-23194-Civ-COOKE/TURNOFF

MARCO BERNAL,

    Plaintiff
vs.

BEACON – FL, LLC,

    Defendant.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS IN FAVOR OF ARBITRATION

THIS MATTER is before me on Defendant's Motion to Dismiss in Favor of Arbitration. (ECF No. 15). I have reviewed the parties' arguments, the record, and the relevant legal authorities. For the reasons explained in this Order, the Defendant's Motion to Dismiss is granted in part and denied in part.

**I. BACKGROUND**

This is an employment discrimination action. Defendant, Beacon-FL, LLC, doing business as Potamkin's Planet Dodge, was Plaintiff Marco Bernal's employer. Defendant contends that the parties have an arbitration agreement, which covers employment disputes, such as the one here. Defendant therefore moves to dismiss Plaintiff's Complaint in favor of arbitration.

Plaintiff argues that the arbitration agreement is procedurally unconscionable because Defendant deprived him of any meaningful choice in signing the document. Specifically, Plaintiff argues that: (i) Defendant had superior bargaining power, so this was a "take it or leave it" contract of adhesion; (ii) Plaintiff did not understand what he was signing because he cannot read in English; (iii) Defendant did not explain to Plaintiff that he was signing an arbitration agreement; and (iv) Plaintiff did not know he was signing an arbitration agreement; rather, he thought he was

signing a receipt for having received the Employee Handbook.  Plaintiff does not make any argument that the agreement is substantively unconscionable.

On April 19, 2011, I held an evidentiary hearing on the issue of the formation of the arbitration agreement, and in specific, whether the contract is unconscionable.  Defendant presented evidence that in 2002 it made revisions to the Employee Handbook and decided to use arbitration as its means for dispute resolution.  Defendant presented the new Employee Handbook and the arbitration agreement to all of its employees in June 2002.  The arbitration agreement is a one-page document, containing the title "Agreement to Arbitrate," in all capital letters, at least 14-point font, bolded, and underlined.   As part of the June 2002 presentation, Defendant held meetings with small groups of employees where management explained the new Handbook policies and the new arbitration agreement.  All of the materials were in English and Defendant conducted the meetings in English.  During the meetings, the employees had the opportunity to review the materials, including the arbitration agreement, and ask any questions.  The employees had the opportunity to take the document home if they wanted to.

Defendant also indicated that in 2002, the automobile industry was very strong.  Employers were trying to hire as many salespeople as they could.  Defendant had sixty employees at the time.  Defendant has about half of that workforce today.  Salespeople with experience could seek employment at a variety of different dealerships, so they were in a superior bargaining position to the dealerships, such as Defendant.

The Plaintiff presented evidence that he cannot read in English.[1]  When he signed the one-page document, he did not know it was an arbitration agreement.  He believed that he was signing an acknowledgement of receipt of the Handbook.  Plaintiff did not present any evidence to suggest

---

[1] Defendant presented evidence that contradicts this contention.  Defendant presented evidence that Plaintiff regularly dealt with sales documents that were only available in English, such as credit applications and buyer's orders.  Plaintiff did not have trouble filling out or explaining these documents to customers.

2

that Defendant made any misrepresentations to him about what he was signing, nor that Defendant prevented Plaintiff from asking questions or taking the document home for further review or to obtain assistance in reading it. Plaintiff states, however, that Defendant presented the document on payday and "it was understood" that the employees, including Plaintiff, had to sign the document to get paid and keep their jobs. Plaintiff did not present any further evidence to support this "understanding." Plaintiff agreed that he had significant experience in automobile sales, and that was why Defendant hired him.

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, provides that a written arbitration agreement is valid "save upon such grounds as exist at law or in equity for the revocation of any contract." FAA § 4. "If 'the making of the arbitration agreement' is in issue, however, the court must first adjudicate whether the agreement is enforceable against the parties." *Bess v. Check Express*, 294 F.3d 1298, 1304 (11th Cir. 2002). "Both the Federal Arbitration Act and the Florida Arbitration Code permit a challenge to the validity of an arbitration provision based upon any state-law contract defense." *Gainesville Health Care Ctr., Inc. v. Weston*, 857 So. 2d 278, 283 (Fla. Dist. Ct. Ap. 2003) (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). Under Florida law, "a court may decline to enforce a contract on the ground that it is unconscionable." *Id*.

"Before a court may hold a contract unconscionable, it must find that it is *both* procedurally and substantively unconscionable." *Id*. at 284 (emphasis in original). A court need not find procedural and substantive unconscionability in equal amounts, however. *VoiceStream Wireless Corp. v. U.S. Commc'ns*, 912 So. 2d 34, 39 (Fla. Dist. Ct. App. 2005). "Instead, a balancing approach is employed allowing one prong to outweigh another provided that there is at least a modicum of the weaker prong." *Id*.

The party seeking to avoid an arbitration agreement on the ground of unconscionability has

3

the burden of presenting sufficient evidence to support the claim. *Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 288. "That burden encompasse[s] the obligation to prove *both* procedural and substantive unconscionability." *Id*.

### III. ANALYSIS

#### A. Substantive Unconscionability

Plaintiff fails to provide any evidence or arguments that the arbitration agreement is substantively unconscionable. "To determine whether a contract is substantively unconscionable, a court must look to the *terms of the contract, itself,* and determine whether they are so 'outrageously unfair' as to 'shock the judicial conscience.'" *Gainesville Health Care Ctr., Inc.*, 857 So. 2d at 284-85 (emphasis added). Although procedural and substantive unconscionability do not need to exist in equal amounts, "at least a modicum of the weaker prong" is necessary. Here, there is none. Because Plaintiff failed to present sufficient evidence of substantive unconscionability, this case must be dismissed in favor of arbitration. *Cf. id.* at 288 ("Because appellee failed to present evidence sufficient to establish that the arbitration provision is procedurally unconscionable, she dialed to carry [her] burden. And we need not decide whether the provision is substantively unconscionable.").

#### B. Procedural Unconscionability

Even if Plaintiff had met his burden to show substantive unconscionability, his argument would still fail because he does not establish that the arbitration agreement was procedurally unconscionable. "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *VoiceStream Wireless Corp.*, 912 So. 2d at 39. "However, "[m]ere inequality in bargaining power is not a sufficient reason to hold that arbitration agreements are never unenforceable in the

employment context." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 33 (1991).

The evidence presented suggests that, given the state of the automobile sales industry in 2002, Plaintiff, as an experienced salesperson, may have been in a superior bargaining position to Defendant. Even if that were not the case, where an employer presents an arbitration agreement on a "take it or leave it" basis, the employee must show that he lacked employment alternatives in the event that he chose to "leave it." *Bhim v. Rent-a-Center, Inc.*, 655 F. Supp. 2d 1307, 1315 (S.D. Fla. 2009). Plaintiff did not present any evidence that he lacked employment alternatives.

Plaintiff's argument that he could not read in English and therefore could not understand the contract similarly fails. First, it is not unclear from the evidence presented that Plaintiff could not read in English, since he regularly handled complex sales documents that were only available in English. In any case, inability to read in English will not preclude a person from entering into a binding contract that he signs without reading. *Merrill, Lynch, Pierce, Fenner & Smith, Inc. v. Benton*, 467 So. 2d 311, 313 (Fla. Dist. Ct. App. 1985). "Unless one can show facts and circumstances to demonstrate that he was prevented from reading the contract, or that he was induced by statements of the other party to refrain from reading the contract, it is binding. No party to a written contract in this state can defend against its enforcement on the sole ground that he signed it without reading it." *Sabin v. Lowe's of Florida, Inc.*, 404 So. 2d 772, 773 (Fla. Dist. Ct. App. 1981).

Plaintiff has not presented any facts to show that Defendant prevented him from reading the contract or that Defendant induced him to sign the contract without reading it. In fact, Defendant presented evidence that its employees were free to take the document home to further review it. Plaintiff chose not to take this opportunity. Florida law is clear that "[i]f a person cannot read the instrument, it is as much his duty to procure some reliable person to read and explain it to him, before he signs it, as it would be to read it before he signed it if he were able to do so, and his

5

failure to obtain a reading and explanation of it is such gross negligence as will estop him from avoiding it on the ground that he was ignorant of its contents." *Sutton v. Crane*, 101 So. 2d 823, 825 (Fla. Dist. Ct. App. 1958). Plaintiff's failure to find someone who could read the document to him cannot vitiate the agreement. He is presumed under Florida law to understand the contents and is now bound by the terms and conditions of the agreement.

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss in Favor of Arbitration (ECF No. 15) is **GRANTED**.
2. The Parties shall submit this dispute to binding arbitration pursuant to the provisions of the arbitration agreement.
3. This case is **STAYED** pending arbitration of the Parties' dispute. This Court retains jurisdiction to enforce the arbitral award, if appropriate.
4. The Parties are directed to notify this Court within thirty days of completing arbitration, at which time Defendant may move to dismiss this action.
5. The Clerk is directed to *administratively* **CLOSE** this case.
6. All pending motions, if any, are **DENIED** as moot.

**DONE and ORDERED** in chambers at Miami, Florida, this 25th day of April 2011.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*